Gregory D. Smith, Tyler, for relator.

Aymara K. Edwards, Houston, Paul M. Boyd, Tyler, for respondent.

**HYSTER COMPANY, Relator,**

v.

**Hon. R. Wayne LAWRENCE, Judge, Respondent.**

**No. 12–91–00018–CV.**

Court of Appeals of Texas, Tyler.

July 31, 1991.

Rehearing Denied April 15, 1992.

COLLEY, Justice.

In the underlying cause, plaintiff, Earnest Scott (Scott), a former employee of Northcutt Woodworks, L.P. (hereinafter "Northcutt") filed a motion to compel production of certain documents generated by relator Hyster Company's early investigation of an accident occurring on April 3, 1989, in which Scott was severely injured. Respondent, The Honorable R. Wayne Lawrence, District Judge, granted Scott's motion. Relator now seeks a writ of mandamus compelling the respondent to vacate that order dated January 24, 1991. We conditionally grant the writ.

The core issue presented here is whether relator met the burden of producing evidence to satisfy the two-part analysis found in *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 40–41 (Tex.1989). The production of such evidence is essential to the establishment of relator's claimed discovery exemptions under Tex.R.Civ.P. 166b, subdivision 3, paragraph d, for certain documents prepared by relator in connection with its investigation or defense of the underlying suit, "or in anticipation of the ... defense of the claims made a part of the [underlying suit]." Another issue is whether relator met the additional requirement of pleading the specific exemption or privilege from discovery which they relied upon. *See Loftin v. Martin,* 776 S.W.2d

**342**

145, 147 (Tex.1989); Tex.R.Civ.P. 166b, subd. 4.

The record (pleading) reveals that, on April 3, 1989, Scott, an employee of Northcutt sustained severe bodily injuries while operating a forklift manufactured by relator, and sold to Northcutt by C. Jim Stewart and Stevenson, Inc. (hereinafter "S & S, Inc."), when a "load of lumber fell onto the forklift and onto the overhead guard ... [of] ... the forklift." It is likewise undisputed that Scott was engaged in performing a duty within the course and scope of his employment with Northcutt at the time of his injury. It is also undisputed that American International Recovery, Inc. (hereinafter "American") was Northcutt's workers' compensation carrier at the time of the accident.

Scott filed a personal injury suit against relator and S & S, Inc. sometime prior to October 16, 1989. On November 1, 1989, Scott served relator with his first request for production of documents. With Scott's agreement, the time for relator to respond to the request for production was extended to February 2, 1990.[1] On that date, relator served and filed its responses and objections to paragraph 2 of the request, reading:

> Defendant objects to this Request to the extent that it seeks production of documents which were prepared by this Defendant and its representatives subsequent to the date when it had a reasonable basis for believing that a claim or suit would be made or filed against it and which were made by Defendant and its representatives in anticipation of and in preparation for the defense of the claims and suits herein. Rule 166(b), Texas Rules of Civil Procedure.

Defendant hereby offers to submit all of such documents to the Court for an in camera inspection should the Court deem it necessary.

On or about April 25, 1990, American intervened in the suit. On October 11, 1990, relator filed a motion for protection against a subpoena duces tecum calling for production of the same documents embodied in the earlier request for production. This subpoena was attached to Scott's notice of intention to take relator's deposition.

Relator, by its motion for protection, claimed the same exemption or privilege recited in its objections to Scott's first request for production of documents. Following the filing of relator's motion for protection, Scott served and filed a motion to compel the production of the documents sought by his first request for production.[2] Scott alleged in his motion to compel production that those documents "if not entirely created prior to the institution of [suit] ... were in no way created in connection with this lawsuit."

Relator made a written response to Scott's motion to compel, alleging the same objection as earlier made to the request for production of documents. Attached to the response was the affidavit of Marvin L. Welch, relator's risk manager. It appears from the affidavit testimony that Welch was a long-time employee of relator and had served as risk manager for relator for a period of six years. The affidavit also recited the following:

> On April 12, 1989, I received an accident report by telefax communication from Dean E. Summers, Corporate Claims Manager for [S & S, Inc.], a Hyster Company dealer in Houston, Texas. The accident report described the April 3, 1989, accident at Northcutt Woodworks involv-

---

**1.** Although the provisions of Rule 167(2), then effective, did not specifically authorize the parties to extend the time for filing objections to discovery requests by such an agreement, no exceptions were made to relator's response. Furthermore, we presume that the trial judge impliedly found at the conclusion of the November 15 hearing that the agreement constituted "good cause" for the late filing of relator's response, thereby rendering cases such as *Hobson*

*v. Moore*, 734 S.W.2d 340, 341 (Tex.1987), inapplicable.

**2.** The motion to compel sought "each and every document or writing by whatever name called that relate to or reflects the conduct of or the conclusions of any investigation conducted by [Relator] prior to September 12, 1989, concerning this incident." The motion was limited to the enforcement of Scott's request for production.

ing Earnest Scott and the report specifically stated, 'Forklift operator was stacking bundles of lumber when he bumped another stack of lumber causing two of those bundles to fall. One bundle hit overhead guard and one bundle landed on upright. Mr. Blackwell alleges that the weld on the overhead guard was defective. Northcutt's Compensation Carrier [American] asked [Northcutt] to hold all parts. Mr. Blackwell has taken some pictures.' Mr. Blackwell was identified as Joe Blackwell of Northcutt Woodworks Company in another part of the telefaxed report and Earnest Scott was identified as an employee of Northcutt Woodworks. The report further indicated that Mr. Scott had received personal injuries, including two fractured ribs, a fractured arm, possibly two cracked vertebrae in the neck, and that he was taken to Mother Frances Hospital in Tyler, Texas.

The affiant further stated that, based on statements by Mr. Blackwell indicating "that the weld on the overhead guard was defective, the actions of [American] in requesting that the parts be impounded, the extent of Mr. Scott's injuries, ... I was convinced, upon receipt of the accident report, that a claim and lawsuit would eventually be pursued by the workers' compensation carrier and by Mr. Scott against Hyster Company." Later in the affidavit, Welch also testified that, upon receipt of the April 12, 1989, report, he notified relator's general counsel of the products liability claim, and the accident report. The affidavit recited also that the attorney recommended that an investigation be undertaken at once, and it was. The affidavit concluded with a list of the documents generated by the investigation, designated by number and description, and recited that the eleven documents listed were the only ones received by relator regarding the accident and the investigation in question.

Here, as already noted, the ultimate issues presented are whether relator specifically pleaded the privilege claimed and produced sufficient evidence at trial to meet the two-part analysis found in *Flores v. Fourth Court of Appeals*. In *Flores*, we are taught (1) that an "objective examination" of the circumstances surrounding relator's early investigation of the accident must be made, and such circumstances must reveal an "outward manifestation" indicating that either Scott or American (under former TEX.REV.CIV.STAT.ANN. art. 8307, § 6(a)) [3] would soon file a products liability/personal injury suit against relator, and (2) that relator had, before embarking on its investigation of the accident, "a good faith belief that litigation would [soon] ensue." *Flores*, 777 S.W.2d at 41.

*Flores* teaches also that "[t]here cannot be good cause to believe a suit will be filed unless elements of both prongs [parts] are present." *Id.* In this case, unlike *Flores*, there existed an outward manifestation indicating that a suit would be filed against relator. Looking at the totality of the circumstances surrounding the investigation by relator, which generated the documents sought to be discovered by Scott and American, it is obvious that Scott had a substantial workers' compensation claim. In addition, it is undisputed in the record before us that Scott was injured while in the course and scope of his employment with Northcutt. The only disputed question, if any, to be resolved in the workers' compensation claim was the extent and duration of Scott's injuries. American's action in impounding parts of the overhead guard on the forklift truck overtly demonstrates American's awareness of, and agreement with, the contention of Northcutt's supervisor, Joe Blackwell, that a weld on the overhead guard was defective, as well as the fact that American had made some sort of investigation of the forklift accident shortly after it occurred. *See Phelps Dodge Refining Corp. v. Marsh*, 733 S.W.2d 359, 360 (Tex.App.—El Paso 1987, no writ). That investigation, however brief, was totally unnecessary to the defense of a workers' compensation claim, but highly rele-

---

**3.** Act of May 17, 1985, ch. 326, § 1, 1985 Tex. Gen.Laws 1387, 1388, *repealed by* Act of December 11, 1989, ch. 1, § 16.01(10), 1989 Tex.Gen. Laws 114 (codified now as TEX.REV.CIV.STAT.ANN. art. 8308–4.05 (Vernon Supp.1991); (hereinafter called section 6a).

vant to American's prosecution of a subrogation suit against relator under section 6a.

We are persuaded that the evidence contained in Welch's affidavit shows outward manifestations of American's intent to file suit against relator; we further conclude that this was sufficient to induce a subjective good faith belief on relator's part, on April 12, 1989, that a product's liability suit to recover damages for Scott's personal injuries would soon be filed by American or Scott against it. Hence, the exemption provided by TEX.R.CIV.P. 166b, subdivision 3, paragraph d, properly raised by objection here, applies. *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801, 802 (Tex.1986); *Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex.1986).

We conclude, therefore, that good cause existed to support relator's belief that a suit against it was imminent. Consequently, the documents generated by its investigation and prepared on or before April 12, 1989, were not subject to discovery. The trial court abused its discretion in granting the discovery by its order of January 24, 1991. We conditionally grant the writ of mandamus. The writ will issue only if the Honorable R. Wayne Lawrence fails to rescind his order within fifteen (15) days of the receipt of this opinion.

BASS, Justice, dissenting.

The majority has concluded that good cause existed to support Hyster's belief that a suit against it was imminent when it undertook its investigation. Were the majority the trial court, I would defer to that decision. However, the core issue presented is not, as the majority states it, "whether relator met the burden of producing evidence to satisfy the two part analysis found in *Flores*," but whether the trial judge's determination that the relator had not met that burden was so arbitrary and unreasonable as to constitute a clear abuse of discretion. The majority ignores the abuse of discretion standard appropriate to mandamus, and improperly substitutes the appellate court's discretion for that of the trial court.

Neither the meaning to be given the facts of this case nor the applicable law are so self-evident that a decision on either side of the question which confronted the trial court should be characterized as an abuse of discretion. I do not believe that the impounding of the parts, when considered with the other circumstances, so unambiguously constituted an "outward manifestation" that litigation was imminent that a contrary decision constitutes an abuse of discretion. The trial judge is charged with deciding when good cause exists to believe a suit will be filed after objectively viewing all of the facts surrounding the investigation to determine if both of the *Flores* requirements have been met. The trial judge necessarily must make this determination in the light of current case law.

The *Flores* case also stands for the proposition that the filing of a worker's compensation claim does not constitute "litigation" as that term is used in Rule 166b(3)(d), and a pre-hearing report prepared after the receipt of notice of a worker's compensation claim is not considered to have been prepared in anticipation of litigation. *Flores*, 777 S.W.2d at 39–40. A relator's receipt of a letter from the claimant's attorney notifying it of claimant's representation by counsel does not constitute an objective manifestation that litigation is imminent. *American Home Assurance Co. v. Cooper*, 786 S.W.2d 769 (Tex. App.—El Paso, 1990). An unusual or catastrophic accident does not, without more, constitute an outward manifestation that a lawsuit is imminent; nor do severe injuries or death. *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex.1986).

In my view, the trial judge was confronted with an extremely close question. The scope of discovery and the admission of evidence is principally within the discretion of the trial court. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985). A writ of mandamus will issue only to correct a clear abuse of discretion. The relator must establish that the facts and the law permit the trial court to make but one decision; that the trial court either had no discretion in the matter, or that the court's action has exceeded that discretion.

*Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). An appellate court may not substitute its discretion for that of the trial court. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

Discovery and the admission of evidence are, as noted, subjects peculiarly within the province of the trial court. Its decision in this case is entitled to deference, because it was not arbitrary or capricious nor so contrary to law or reason as to amount to an abuse of discretion. By conditionally granting the writ, the majority has disregarded the proper standard of review, and substituted its discretion for that of the trial court. Therefore, I dissent.